UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY SNYDER, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) 24 C 00985 ) ) |
| THE UNIVERSITY OF CHICAGO MEDICAL CENTER, | ) ) ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Plaintiff Kimberly Snyder brings this suit against Defendant University of Chicago Medical Center ("UChicago Medical Center" or "UChicago"), under the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), and the Illinois Wage Payment and Collection Act ("IWPCA") to recover unpaid wages for the time spent undergoing mandatory SARS-CoV-2 ("COVID-19") screening and testing before the start of her shift.

Before the Court is UChicago's motion to dismiss Snyder's Amended Complaint. For the reasons that follow, UChicago's motion to dismiss is granted in part and denied in part.

## BACKGROUND

The following facts come from the Amended Complaint and are assumed true for the purposes of this motion. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). The Court accepts as true well-pleaded facts and draws all reasonable inferences are in Snyder's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

From approximately April 2017 to February 2023, Snyder was employed full-time as a Patient Transport Specialist at the UChicago Medical Center. Snyder's responsibilities included transporting patients throughout UChicago's facilities.

Following the outbreak of COVID-19, federal and state law mandated that UChicago implement preventive measures to minimize the spread of COVID-19. This included the implementation of a company-wide policy requiring hourly, non-exempt employees undergo mandatory COVID-19 screenings prior to the start of their shifts. This resulted in Snyder, and other similarly situated employees, completing approximately 20–30 minutes (sometimes more) of COVID-19 screenings off the clock and without pay. The COVID-19 screenings were not optional. If an employee refused to partake in the screenings, they were threatened with discipline or possible termination. If UChicago failed to implement the legally mandated COVID-19 procedures, it would be prohibited from continuing operations.

Furthermore, Kronos, the timekeeping and payroll cloud-based software used by UChicago at the time, was hacked in December 2021. The system was down from

about December 11, 2021, through January 31, 2022. After the data breach, UChicago switched to an alternative method for timekeeping and payroll. However, the alternative timekeeping and payroll efforts were ineffective and failed to ensure that UChicago timely and accurately paid all minimum and overtime wages owed to employees. As a result, Snyder failed to receive pay for an entire week work.

The Amended Complaint, filed on May 17, 2024, Dkt. # 20, seeks, *inter alia*, compensation for UChicago's failure to pay Snyder minimum wages, overtime wages, and earned wages under the FLSA, IMWL, and IWPCA. UChicago seeks to dismiss each of these claims under Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the Amended Complaint only needs to include "sufficient facts to state a claim for relief that is plausible on its face." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (internal quotations omitted).

**DISCUSSION**

I.    **The Fair Labor Standards Act[1]**

The FLSA requires employers to compensate employees for time worked. *See* 29 U.S.C. §§ 206, 207. Activities that are an "integral and indispensable part" of the "principal activity or activities" that an employee was hired to perform are compensable. *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33 (2014). Activities that are "preliminary to and postliminary to" the principal activity or activities are not. 29 U.S.C. § 254(a). An activity is "integral and indispensable" to the principal activities of employment if it "is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id*.

UChicago argues that pre-shift COVID-19 screenings and testing are not compensable because they were not an "integral and indispensable part" of Snyder's employment because Snyder's employment concerned the transportation of patients. Because Snyder was employed at UChicago, it can be inferred from the Amended Complaint that Snyder's job involved interacting with medically vulnerable individuals while performing her duties. From the onset, the pre-shift COVID-19 screenings in this context are "integral and indispensable" to Snyder's employment, as it would reduce

---

[1] Snyder brings FLSA and IMWL claims for UChicago's failure to compensate employees for required COVID-19 testing and screenings and for the compensation discrepancies that resulted from a timekeeping software hack. UChicago's 12(b)(6) motion for these claims only challenges compensation related to the COVID-19 testing and screenings. As such the Court will only consider the COVID-19 screenings in the analysis for these claims. *See Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) ("perfunctory and underdeveloped" arguments are forfeited).

the risk of further exposing patients to illness. In this sense, the facts here are similar to *Harwell-Payne v. Cudahy Place Senior Living LLC*, 2024 WL 1333428 (E.D. Wis. 2024), where the court found that pre-shift COVID-19 screenings of employees of an elderly home care facility were compensable under the FLSA.

UChicago disagrees. UChicago contends that not only is this case distinguishable from *Harwell-Payne*, but that there is significant case law finding that the COVID-19 screenings were preliminary to employment and are not compensable. We find that Snyder sufficiently pleads a FLSA claim for the time spent completing the required COVID-19 screenings before her shift.

Snyder states that she was a Patient Transport Specialist who had direct contact with UChicago's medical patients. Dkt. # 20, at ¶¶ 13–14. During the COVID-19 pandemic, UChicago required its employees to complete a COVID-19 screening and testing. *Id*. at ¶¶ 31, 33, 38. The examinations were necessary for each employee to perform their work duties, as they were required to ensure the overall safety of patients and to prevent patients from infecting other patients. *Id*. at ¶¶ 31, 44. For Snyder's position specifically, the screenings were required to ensure that she could safely provide transportation services in an environment where transmitting COVID-19 to patients could have lethal consequences. *Id*. at ¶¶ 44, 46. The examinations also ensured that the virus did not disrupt the work performed by employees or the business operations of UChicago. *Id*. at ¶ 48.

5

Snyder's employment as a transportation specialist with direct contact with ill patients, coupled with the consequences that the failure to conduct the COVID-19 screenings would impose on both patients and employees at UChicago, renders the COVID-19 screenings to be "integral and indispensable" to Snyder's employment duties. The COVID-19 screenings served to protect the health and safety of UChicago patients and its employees. *See Steiner v. Mitchell,* 350 U.S. 247, 332 (1956) (requiring a battery manufacturer to compensate its employees for the time spent putting unique protective clothing and bathing after their shift because those activities were indispensable to the health and safety of the employees).

In *Harwell-Payne*, the plaintiff was a medical aide who provided care to the patients residing in a care facility. The plaintiff alleged that the COVID-19 screenings were "integral and indispensable to the plaintiff's principal activity of providing care for the defendants' residents that safeguarded and protected their health and welfare, so that she could not perform her patient care responsibilities if there was a material risk she could transmit COVID-19 to her patients." 2022 WL 6195619, at *7 (E.D. Wis. 2022), *modified on reconsideration*, 2024 WL 1333428 (E.D. Wis. 2024). The court found that it was plausible that the plaintiff had direct patient contact while performing her principal job activities, and that the COVID-19 screenings "may have been integral and indispensable to her ability to do so without posing a risk to the patients." *Id*. Here, Snyder makes similar allegations about the risk of transmitting COVID-19 to UChicago patients.

6

Admittedly, Snyder's claim threads the line of what can and cannot be considered compensable under the FLSA. However, the Court finds the reasoning in *Harwell-Payne*—albeit non-binding—persuasive. Unlike the cases offered by UChicago, *Harwell-Payne* specifically considers the issue of pre-shift COVID-19 screening in a professional health services setting. The FLSA analysis is context-specific. The cases cited by UChicago are distinguishable based on the underlying factual background.

For example, in *Pipich v. O'Reilly Auto Enterprises*, the plaintiff was tasked with "loading and transporting automobile parts from the distribution center to stores throughout the southern California region." 2022 WL 788671, at *1 (S.D. Cal. 2022). As a non-exempt hourly employee, the plaintiff was required to complete COVID-19 screenings and security inspections prior to clocking in for the day. The plaintiff sought compensation for the time spent conducting these screenings. The plaintiff alleged that "in the pandemic era, undergoing COVID-19 screenings is integral to distribution center employees' work, since undergoing such screenings is an intrinsic element of working in a large environment with many other individuals." *Id*. at *3. The court found that the COVID-19 screenings were not integral and indispensable to the employee's duty to load and transport products to stores. The *Pipich* court specifically found that "[u]nlike the nurse in the DOL example whose principal job duty is to keep patients healthy and has direct patient contact, plaintiff's principal activities consisted of manual labor and transportation of auto parts to stores." *Id*. at *4. For these reasons, the COVID-19 screenings here were found non-compensable.

7

But UChicago Medical Center is not an automobile distribution center. It's a medical center, and Snyder's employment required direct interaction with UChicago patients. This requires special consideration, since UChicago's business concerns serving a population with health vulnerabilities. COVID-19 screenings may not be integral and indispensable for a worker whose principal responsibilities are loading and transporting automobile parts and stocking and unloading inventory. To hold that it is not indispensable for a transportation specialist whose responsibilities include transporting and interacting with medical patients would ignore the unique characteristics of this vulnerable community. Indeed, many courts upheld FLSA claims where the plaintiffs alleged significant and vast health risks in connection with the activity at issue. *See Mitchell,* 350 U.S. 247, 332 (1956); *see also Payne*, 2022 WL 6195619 (E.D. Wis. 2022); *Boone v. Amazon*, 562 F. Supp. 3d 1103, 1118 (E.D. Cal. 2022) (finding COVID-19 screenings was integral and indispensable to principal activities because the plaintiff had sufficiently alleged that the screenings prevented the virus "from spreading throughout the defendant's fulfillment centers and infecting employees and products").

One exception is *Johnson v. Amazon.com Services, LLC*, 2023 WL 8475658 (N.D. Ill. 2023), where the court found that COVID-19 screenings were not integral and indispensable to the plaintiffs' principal activities of "moving boxes, stacking packages, and loading boxes" at the Amazon warehouse. *See generally id*. at *2. However, Snyder's principal activities involved the transportation of medical patients at a medical

8

facility. The spread of a virus in a medical facility is different than a distribution warehouse. Further, the holding in *Johnson* relied in part on the fact that the COVID-19 screenings were not integral to warehouse work and were not "necessary for the business to function on any given day." *See id*. But Snyder alleges that legal mandates required mandatory COVID-19 screening for employees of medical facilities, including UChicago Medical Center. *See* Dkt. 20, at ¶¶ 28–30. If UChicago failed to implement these procedures, it would have been legally prevented from continuing to operate. *Id*. at ¶ 45. These allegations distinguish this case from *Johnson*.

UChicago also states that even if the Court were to find COVID-19 screenings were "integral and indispensable" to Snyder's primary work activities, that it should not be compensated because it was not "pursued necessarily and primarily for the benefit of the employer and his business." Dkt. # 25, at 11. However, UChicago fails to provide any authority which states that this defense is available under the FLSA. *Johnson* and *Perez*, cited in support of this proposition, were concerned with the dismissal of quantum meruit and unjust enrichment claims, not the dismissal of the FLSA claim. Snyder raises neither of these claims in the Amended Complaint.

For these reasons, UChicago's motion to dismiss Count I of the Amended Complaint is denied.

## II.     Illinois Minimum Wage Law

UChicago also claims that Snyder's IMWL claim fails for the reasons the FLSA claim fails. "The IMWL parallels the FLSA, and the same analysis has generally been

9

applied to both statutes." *Cho v. Maru Rest., Inc.*, 194 F. Supp. 3d 700, 703 (N.D. Ill. 2016) (citing *Labriola v. Clinton Entm't. Mgmt., LLC*, 2016 WL 1106862, at *5 (N.D. Ill. 2016)). UChicago's motion to dismiss Count II is denied for the same reasons stated for Count I.

### III. Illinois Wage Payment and Collection Act

The Amended Complaint also alleges that UChicago improperly withheld compensation under the IWPCA when it (1) failed to compensate employees for the COVID-19 screenings and (2) failed to institute accurate alternative methods of timekeeping and payroll during the Kronos security breach in 2021.

"The IWPCA provides employees with a cause of action against employers for the timely and complete payment of earned wages." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016). To state a claim under the IWPCA, Snyder must allege that she is owed compensation from UChicago pursuant to an employee agreement. *Gibbs v. ABT Elecs., Inc.*, 2022 WL 16540182, at *4 (N.D. Ill. 2022) (citing *Enger*, 812 F.3d at 568).

The IWPCA does not establish a substantive right to payment of wages or any other benefit. The IWPCA only requires that an employer provide any compensation owed to an employee "pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS 115/2; *see also Hoffman v. RoadLink Workforce Sols., LLC*, 2014 WL 3808938, at *4 (N.D. Ill. 2014). In short, "the IWPCA mandates payment of

10

wages only to the extent the parties' contract or employment agreement requires such payment." *Hoffman*, 2014 WL 3808938, at *4.

UChicago argues that Snyder has not properly pled a IWPCA claim for the COVID-19 screenings because the Amended Complaint fails to allege that there was any sort of agreement between the parties that UChicago would compensate employees for the COVID-19 screenings and testing. The Court agrees. For an IWPCA claim, Snyder must allege that the employee agreement required compensation for the COVID-19 screenings. *See Brown v. Lululemon Athletica, Inc.*, 2011 WL 741254, at *3 (N.D. Ill. 2011) ("It is well established that an employee can have no claim under the IWPCA unless the employer and employee agreed that the former would compensate the latter for the *particular* work allegedly performed.") (emphasis added); *see also Gomez v. El-Milagro, Inc.*, 2023 WL 7418833, at *2 (N.D. Ill. 2023) (dismissing IWPCA claim because the plaintiff failed to sufficiently plead that the work agreement included work performed during the lunch break). Snyder only alleges that there was an agreement that she would be paid for all hours worked. That is not enough. *See Johnson*, 2023 WL 8475658, at *3 (dismissing IWPCA claim where plaintiffs failed to allege that the work agreement included an agreement that defendant would compensate COVID-19 screenings); *see also Brashear v. SSM Health Care Corp.*, 2022 WL 17987041, at *4 (E.D. Mo. 2022) (finding that allegations the defendant agreed to pay the plaintiff for all hours worked did not suggest that the parties agreed that the

11

defendant would compensate the plaintiff for work she performed during her otherwise unpaid meal break) (cited by *Gomez*, 2023 WL 7418833, at *2).

Snyder also alleges that in or around 2021, Kronos was hacked which resulted in the suspension of timekeeping and payroll services to UChicago. Dkt. # 20, at ¶ 64. UChicago began to utilize an alternative method for timekeeping and making payroll, but the methods were ineffective. As a result, employees either failed to get paid, failed to receive timely payments, or received inaccurate payments for a certain period of time after the Kronos disruption. *Id*. at ¶ 128. Unlike the IWPCA claim for the COVID-19 screenings and testing, this allegation concerns payment for work that was not compensated due to administrative shortcomings on UChicago's part. This a viable IWPCA claim. *See Enger v. Chi. Carriage Cab Co*, 77 F. Supp. 3d 712, 715 (N.D. Ill. 2014) ("[t]he IWPCA allows for a cause of action based on wrongfully held compensation pursuant to a contract or agreement").

Count III is dismissed, without prejudice, for any payment in connection with the COVID-19 screenings and testing. UChicago's motion to dismiss Count III is denied for claims in connection with the failure to compensate employees after the Kronos disruption.

### IV. Sufficiency of the Pleadings

In addition to the previous arguments, UChicago moves to dismiss the Amended Complaint on the grounds that it fails to meet the pleading standard. Under the federal notice-pleading standard, a plaintiff must provide "enough detail to give the defendant

fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Reger Dev., LLC v. Natl. City Bank*, 592 F.3d 759, 764 (7th Cir. 2010), *as amended* (Dec. 16, 2010). A complaint need not contain detailed factual allegations, but it must provide more than "a formulaic recitation of a cause of action's elements" supported by merely conclusory statements. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

UChicago argues that Snyder fails to plead sufficient facts to support her minimum wage claim for the withheld compensation that resulted from the Kronos disruption. The Amended Complaint is deficient, UChicago claims, because it is devoid of any information about Snyder's hourly compensation or the amount she was compensated on any given workweek. In support, UChicago cites *Hancox v. Ulta Salon, Cosmetics, & Fragrance, Inc.*, 2018 WL 3496086, at *3 (N.D. Ill. 2018), and *Vann v. Dolly, Inc.*, 2019 WL 1785589, at *2 (N.D. Ill. 2019). However, these cases concern uncompensated overtime, not withheld payments. The courts were tasked with analyzing whether the failure to pay employees for certain activities caused their average hourly rate for that week to fall below minimum wage. UChicago has not provided any authority where the analysis concerned an employer who failed to provide overall compensation to its employees for a certain period of time. Under the notice pleading standard, the allegations in the Amended Complaint provide sufficient information to give UChicago proper notice of the minimum wage Kronos claim.

13

The only remaining pertinent *Twombly/Iqbal* argument is that the allegations regarding the COVID-19 screenings and testing are insufficient. UChicago argues that pleadings fail to provide any information about the start and end dates of the COVID-19 exams. However, such specification is not required. Again, a complaint only needs to provide sufficient details enough to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Here, the Amended Complaint provides sufficient allegations to give notice of the compensation claim for the COVID-19 screenings and testing that were required before the start of Snyder's shift.

UChicago also raises concerns about how the uncertainty around the lack of knowledge of the COVID-19 screening and testing dates can have on the applicable statute of limitations. However, "a statute of limitations is an affirmative defense" and "[p]laintiffs need not plead around an affirmative defense, and the Court may not dismiss a claim on the basis of an affirmative defense unless plaintiffs allege, and thus admit, the elements of the affirmative defense. *See Chi. Bldg. Design, P.C. v. Mongolian H., Inc.*, 770 F.3d 610, 613–614 (7th Cir. 2014).

## **CONCLUSION**

For the foregoing reasons, UChicago's motion to dismiss [25] is denied as to Counts I and II and granted in part and denied in part as to Count III. Snyder has until 3/20/2025 to file a Second Amended Complaint. The parties shall file a joint status report on 4/10/2025. It is so ordered.

Dated: 2/20/2025

_____
Charles P. Kocoras
United States District Judge